**Supreme Court**

No. 2013-364-Appeal.
No. 2014-19-Appeal.
(12-1040-1)

:

In the Matter of B.H.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2013-364-Appeal.
No. 2014-19-Appeal.
(12-1040-1)
(Concurring and dissenting
 Opinion starts on Page 18)

:
In the Matter of B.H.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  The respondent, B.H., appeals from adjudications of delinquency entered in the Family Court.  The Family Court trial justice found the respondent delinquent on two charges of first-degree child molestation sexual assault (first-degree child molestation) in violation of G.L. 1956 §§ 11-37-8.1 and 11-37-8.2.  On appeal, the respondent primarily contends that the evidence at the delinquency proceeding was insufficient to establish sexual penetration—an element of both of the charges of first-degree child molestation of which the respondent was adjudged to be delinquent.  We agree that the evidence was insufficient on this element, and we remand to the Family Court with directions to enter adjudications of delinquency on the lesser-included offense of second-degree child molestation sexual assault (second-degree child molestation) and for resentencing.

**Facts and Travel**

In August 2012, the Cranston Police Department filed delinquency petitions with the Family Court, alleging that, when respondent was thirteen years old, he committed two offenses that, if committed by an adult, would constitute the offense of first-degree child molestation and

- 1 -

one offense that, if committed by an adult, would constitute the offense of second-degree child molestation. The two complainants, Kevin and Henry, are twin brothers who were eleven years old at the time of the offenses.[1] The state alleged that respondent committed first-degree child molestation against Kevin and Henry when he forced the victims to penetrate his anus with their penises and that he committed second-degree child molestation when he touched Kevin's penis with his hand.[2] Because the testimony of the two complainants is central to the primary issue respondent raises on appeal, we recount it in some detail.

The conduct giving rise to all three offenses occurred during a sleepover in August 2011. After a day of fishing, Kevin, Henry, and respondent had a sleepover at the home of the twins' maternal grandparents. During the sleepover, the three boys shared the same room. Kevin testified that, after the three boys had retired to the bedroom that evening, respondent asked Kevin to put Kevin's penis "in [respondent's] butt." Because Kevin trusted respondent, who was his best friend, and because respondent threatened to tell his grandmother "something" if he refused, Kevin complied. When asked whether his penis went "inside of [respondent's] butt," Kevin responded in the affirmative. Kevin also testified that respondent expressed a desire to insert respondent's penis into Kevin's "butt" but that Kevin refused. On cross-examination, it became apparent that Kevin was unable to recall the specifics of this episode with any great detail, and he repeatedly stated that he did not remember the details. However, Kevin was

---

[1] To afford the complainants a measure of privacy, we use fictitious names to identify them.

[2] The trial justice ultimately concluded that the state failed to prove beyond a reasonable doubt that respondent committed second-degree child molestation by touching Kevin's penis, and this finding is not pertinent to the issues on appeal. Accordingly, we have no need to discuss the evidence relating to this charge.

emphatic that his penis went "in" and "inside" respondent's "butt."[3] It is evident from the transcript that it was difficult for Kevin to testify about what transpired during the sleepover. The trial justice later explained in her bench decision that Kevin "was noticeably upset, crying, [and] sometimes almost sobbing" during the course of his testimony.

Like Kevin, Henry had difficulty testifying about this episode; he testified that "I don't like talking about it." The trial justice later described each twin as "visibly shaken" during his testimony. Henry's testimony was similar to his brother's. He testified that respondent proposed that the boys engage in "[a]n experiment to see if we wanted to be gay" and that the experiment was "[t]o stick my penis in his butt." Henry testified that he placed his penis "inside [respondent's] butt."[4] Like Kevin, Henry explained that he complied with respondent's request because respondent threatened to tell his grandmother that they "were trying to do something" if he did not. Henry also testified that respondent placed his penis on Henry's body and that he, like his brother, refused to allow respondent to insert his penis into Henry's "butt." As was true for Kevin's testimony, cross-examination revealed that Henry could not recall many specifics of the episode. Nevertheless, when defense counsel asked whether Henry put his penis "inside of [respondent]," Henry responded that he did. On redirect examination, Henry was asked, "[W]hen you mean [respondent's] butt, what is that part of [the] body used for?" Henry did not answer this question.[5]

---

[3] Henry also testified that he observed Kevin "[stick] his penis in [respondent's] butt."

[4] Confirming Henry's testimony, Kevin testified that he observed his brother "[p]utting his penis in [respondent's] butt."

[5] During closing argument, the state asserted that "[Henry] clarified that [the term] 'butt' [meant] the part of the body that one uses to poop." However, this assertion does not comport with the transcript of the delinquency proceeding. The pertinent passage of the transcript reads as follows:

The twins' mother testified that, when she picked up her children the day after the sleepover, a hysterical Kevin told her that "[respondent] wanted them to do it in the bum bum of them, and * * * [respondent] looks like he enjoyed it." Finally, Det. Sean Maloney of the Cranston Police Department testified that, after he explained the arraignment procedure in Family Court to respondent, respondent stated: "I understand. I did it. I did not force them. It was experimental."

At the close of the state's case, respondent moved to dismiss the petitions. With respect to the first-degree child molestation charges, defense counsel argued that the twins' testimony that they placed their penises "in" or "inside" respondent's "butt" was insufficient to establish sexual penetration—an essential element of the offense. Defense counsel also argued—incorrectly, we conclude—that, if the state had established sexual penetration, the state was required, in the circumstances of this case, to prove that respondent "acted with the intent for sexual arousal or sexual gratification" and that it had not done so.

The trial justice denied respondent's motion, concluding that the testimony of both Kevin and Henry was sufficient to establish sexual penetration. The trial justice explained her rationale as follows:

> "[I]n or inside the butt, as described by each victim, is more than sufficient to satisfy the requirement of the statute for sexual penetration. In or inside the butt is an intrusion, however slight. In or inside the butt is certainly where the anal opening is located.

---

> "Q. And[,] just to clarify, when you mean [respondent's] butt, what is that part of [the] body used for?
>
> "A. (NO RESPONSE)."

We therefore give no weight to this assertion. Additionally, we note that the state has not repeated this assertion on appeal, and the trial justice made no mention of it in her findings of fact adjudicating respondent delinquent on the two charges of first-degree child molestation.

- 4 -

"This Court does not expect a child, now thirteen years old, to describe a horrific act that occurred two years ago when the child was eleven years old, with such specificity and adult language that it mirrors the language of the statute. Using one's common sense, the victims each were truthful, credible[,] and consistent in describing the act[,] and[,] when questioned and challenged many times, each testified consistently at different times that their penis[es were] inside [respondent's] butt. Inside plainly means an intrusion, however slight, in the anal opening."

Although the trial justice also rejected respondent's argument that the state was required to prove that respondent acted with the intent of sexual arousal or gratification, she nonetheless went on to conclude that the state had in fact proven that respondent's conduct was intended for sexual arousal or gratification. She explained:

"[T]he [r]espondent's specific request of each victim to penetrate his butt with their penis[es], [r]espondent's description and instruction on how to perform the act which he called an experiment and his willingness to participate and [his] engaging in the act was for the sole and exclusive purpose of sexual gratification or arousal. There was no other reason or purpose for [r]espondent to make such a suggestion to two very young[,] inexperienced boys whose innocence and trust in him practically guaranteed compliance.

"Further, [r]espondent's later request to penetrate the victims, which request was refused by them, adds another layer to [r]espondent's quest for sexual gratification or arousal.

"Even though th[e] element [that the accused act with the intent for sexual arousal or gratification] is not essential to [prove] when the act is purposeful penile penetration, that element does exist here."

Concluding that the state had met its burden of proving that respondent committed first-degree child molestation upon Kevin and Henry, the trial justice adjudged respondent delinquent on those charges. The respondent timely appealed.

- 5 -

**Standard of Review**

On appeal from an adjudication of delinquency, our task "is to review the record to determine 'whether legally competent evidence exists therein to support the findings made by the Family Court trial justice.'" In re Miguel A., 990 A.2d 1216, 1220 (R.I. 2010) (quoting In re Andrey G., 796 A.2d 452, 456 (R.I. 2002)). In passing on the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); cf. In re Miguel A., 990 A.2d at 1223 (reciting a similar standard for this Court's review of a motion for a judgment of acquittal).

**Analysis**

**Sufficiency of Evidence on Sexual Penetration**

The respondent argues that the evidence in this case, which establishes, at most, that Kevin and Henry each inserted his penis "in" and "inside" respondent's "butt," is insufficient to establish sexual penetration—an essential element of the offense of first-degree child molestation. We agree.

Section 11-37-8.1 provides that "[a] person is guilty of first[-]degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under." (Emphasis added.) In turn, § 11-37-1(8) defines the term "[s]exual penetration" as follows:

> "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, and anal intercourse, or any other intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of another person's body, or the victim's own body upon the accused's instruction, but emission of semen is not required."

This case requires us to decide whether testimony that Kevin's and Henry's penises were "inside of [respondent's] butt" is sufficient to establish "anal intercourse[] or any other intrusion, however slight, by any part of a person's body or by an object into the * * * anal opening[] of another person's body * * *." Id. We unanimously hold that this evidence is not sufficient.

Although the focus below and in the briefs on appeal was whether the evidence was sufficient to establish an "intrusion, however slight, * * * into the * * * anal opening[]," § 11-37-1(8), the state contended at oral argument that what transpired during the sleepover qualifies as "anal intercourse" as that term is used in the statute. We reject this assertion. The terms "sexual intercourse" and "anal intercourse" are not defined in § 11-37-1. Dictionaries typically provide a primary definition of "sexual intercourse" that involves the penetration of the vagina by the penis.[6] See, e.g., Mosby's Medical, Nursing, and Allied Health Dictionary 276, 1075 (3d ed. 1990) (Mosby's) (defining "sexual intercourse" and "coitus" as "the sexual union of two people of opposite sex in which the penis is introduced into the vagina"); Merriam-Webster's Collegiate Dictionary 1074 (10th ed. 1997) (Merriam-Webster's) (defining "sexual intercourse" as "heterosexual intercourse involving penetration of the vagina by the penis"). Although the parties have not cited, and we have not found, a dictionary definition of the term "anal intercourse," we are persuaded that that term, like sexual intercourse, involves penetration by the penis. Therefore, the term "anal intercourse" means penetration of the anal opening by a penis. See State v. DeLeonardo, 340 S.E.2d 350, 353 (N.C. 1986) ("Anal intercourse requires penetration of the anal opening of the victim by the penis of the male."); 70C Am. Jur. 2d

---

[6] When confronted with an undefined term contained in G.L. 1956 § 11-37-1(8), we turn to dictionary definitions for that term. See, e.g., In re Ryan B., 739 A.2d 232, 235 n.2 (R.I. 1999) (consulting dictionary definition for term "fellatio"); State v. Beaulieu, 674 A.2d 377, 378 (R.I. 1996) (same for term "cunnilingus").

Sodomy § 3 at 644 (2011) ("One act that is almost universally prohibited by sodomy statutes is anal intercourse, which requires the penetration of the anal opening of the victim by the penis of a male."); cf. State v. Bryant, 670 A.2d 776, 778, 783 (R.I. 1996) (referring to "count 3[, which charged 'anal intercourse,'] where anal penetration by the penis was charged and found to have occurred").

Thus, if the twins' testimony established only an intrusion into the area between respondent's buttocks and not an intrusion into respondent's anal opening, such an intrusion does not constitute anal intercourse. See State v. Gallagher, 668 A.2d 55, 61 (N.J. Super. Ct. App. Div. 1995) ("While insertion of the penis between the left and right buttocks may be sufficient to prove sexual contact in that there is a touching of the victim's intimate part, it is not sufficient to prove anal intercourse."). The precise issue we must decide, then, is whether the testimony of each twin that his penis went "in" and "inside" respondent's "butt" is sufficient to qualify as an intrusion into the anal opening.

The word "butt" in the context in which it was used by Kevin and Henry is slang for buttocks. See 1 J.E. Lighter, Random House Historical Dictionary of American Slang 333 (1994); Richard A. Spears, NTC's Dictionary of American Slang and Colloquial Expressions 61 (3d ed. 2000); Kenneth G. Wilson, The Columbia Guide to Standard American English 82 (1993); see also Merriam-Webster's, at 155. The buttocks are defined as "[t]he prominence formed by the gluteal muscles of either side." Stedman's Medical Dictionary 283 (28th ed. 2006) (Stedman's); see also Dorland's Illustrated Medical Dictionary 248 (27th ed. 1988) (defining "buttock" as "one of the gluteal prominences; called also clunis or breech and, in the plural, nates"); Mosby's, at 795 (defining "nates" and "buttocks" as "the large fleshy protuberances at the lower posterior portion of the torso comprising fat and the gluteal

muscles"). The anus or anal orifice, by contrast, is defined as "[t]he lower opening of the digestive tract. It is associated with the anal sphincter and lies in the cleft between the buttocks, through which fecal matter is extruded." Stedman's, at 114. "The words [buttocks and anus] are not synonyms as they describe entirely different parts of the anatomy." Downey v. State, 726 N.E.2d 794, 797 (Ind. Ct. App. 2000).

When enacting the chapter of our general laws relating to sexual assault, the General Assembly drew a distinction between the buttocks and the anus. The term "sexual penetration"—an essential element of first-degree sexual assault, see § 11-37-2, and first-degree child molestation, see § 11-37-8.1—is defined to include intrusions into the "anal opening[]." Section 11-37-1(8). By contrast, the offenses of second-degree sexual assault and second-degree child molestation require "sexual contact." Section 11-37-4; § 11-37-8.3. Sexual contact is defined as "the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault." Section 11-37-1(7). In turn, the phrase "[i]ntimate parts" is defined as "the genital or anal areas, groin, inner thigh, or buttock of any person or the breast of a female." Section 11-37-1(3) (emphases added). It is clear from this carefully constructed statutory framework that the General Assembly appreciated the distinction between the buttocks and the anus or anal opening.

This Court's decision in State v. McDonald, 602 A.2d 923 (R.I. 1992), is instructive. In that case, the defendant was charged with first-degree sexual assault arising from digital penetration of the complainant's vagina. Id. at 924, 925. The complainant testified that the defendant "touched her 'in the vagina.'" Id. at 924. She also testified that the defendant had "touched her 'in the breasts.'" Id. at 925. We held that this evidence was insufficient to

- 9 -

establish sexual penetration.  Id.  In so holding, we explained that, "in respect to such a serious allegation [as digital vaginal penetration], precise and specific testimony is necessary to support it" and that "[t]o infer penetration from [the complainant's] testimony would be to draw an inference that could scarcely justify a finding of digital penetration beyond a reasonable doubt."  Id.

In this case, the necessary precise and specific testimony was lacking.  The twins' use of the term "butt" rendered their testimony too imprecise and vague on the pertinent question of whether sexual penetration occurred in this case: that is, whether there was an intrusion, however slight, into respondent's anal opening.  In reaching this conclusion, we necessarily reject the trial justice's reasoning that "[i]n or inside the butt is certainly where the anal opening is located." This circumstance is beside the point.  To sustain a prosecution for first-degree child molestation, the state had the burden of proving beyond a reasonable doubt that sexual penetration—an intrusion into an anal opening in the circumstances of this case—occurred.  By eliciting only testimony about an intrusion into respondent's "butt," the state failed to carry its burden.   An intrusion into the space between a person's buttocks, while perhaps a necessary step on the path to intrusion of the anal opening, is not, in itself, an intrusion into the anal opening.  See Downey, 726 N.E.2d at 798 ("Despite their proximity, the buttocks and anus are not the same, and an inference that contact with the buttocks necessarily includes contact with the anus[7] cannot be made beyond a reasonable doubt in this case.").

Although we reaffirm today that "precise and specific testimony is necessary to support" a prosecution for first-degree sexual assault or first-degree child molestation, McDonald, 602

_____

[7] Unlike Rhode Island's first-degree child molestation statute, which requires an intrusion, however slight, into the anal opening, the statute in Downey v. State, 726 N.E.2d 794, 798 (Ind. Ct. App. 2000), required only that contact with the anus be made.

A.2d at 925, we by no means impose upon young children the burden of employing anatomically correct labels for the parts of the body.[8]  To the contrary, it is entirely appropriate for a young child to use his or her own words to describe the pertinent body parts during his or her testimony, so long as there is some evidence to link these words to the body parts delineated in the statute. See, e.g., In re Andrey G., 796 A.2d at 454, 455 & n.2, 458 (rejecting sufficiency-of-the-evidence challenge with respect to sexual-penetration element of first-degree child molestation where the complainant, who was six years old at the time of the offense, testified that the respondent "put his finger 'inside of [her] privates' and then 'put more fingers in it'" and the respondent kept "tapping me, and I didn't like it"; the complainant also clarified that "'privates' are used for going to the bathroom"); cf. In re Ryan B., 739 A.2d 232, 233, 234, 237 (R.I. 1999) (rejecting sufficiency-of-the-evidence challenge in a first-degree child molestation case involving fellatio where, among other evidence, a detective testified that the complainant, who was six years old at the time of trial, "told him that she had sucked on [the respondent's] lollipop, in his bum, when [the respondent] pulled down his pants" and that the complaint "correctly identified body parts using an anatomical drawing and she pointed to the penis when asked to identify the 'lollipop'").

In this case, however, there was no evidence to link the twins' use of the word "butt" to respondent's anal opening.  When the prosecutor asked Henry "what * * * part of [the] body" the "butt" was used for, Henry provided no response.  The prosecutor did not follow up to ensure an answer to this question was given, and she did not pose a similar question to Kevin.  Consequently, there was a failure of proof.

---

[8] We note that, when they testified, Kevin and Henry were less than four months shy of their fourteenth birthdays.

For these reasons, we hold that the evidence in this case—the testimony of Kevin and Henry that their penises were "in" and "inside" respondent's "butt"—was insufficient to prove beyond a reasonable doubt that sexual penetration of respondent's anal opening occurred.[9]

_____

[9] Numerous courts have reached similar conclusions. See, e.g., People v. Oliver, 347 N.E.2d 865, 868 (Ill. App. Ct. 1976) (holding that the complainant's testimony that the defendant's penis was "in my butt" was insufficient to sustain conviction for deviate sexual assault, which required proof of an act involving the defendant's sex organs and the complainant's anus); Downey, 726 N.E.2d at 796, 796-98 (holding that testimony of child complainant that the defendant "rubbed his penis between her buttocks until orgasm" was insufficient to prove contact between the defendant's penis and the complainant's anus); State v. O'Neill, 589 A.2d 999, 1000-01, 1003, 1004 (N.H. 1991) (affirming trial judge's grant of judgment notwithstanding the guilty verdict for insufficient evidence on penetration element in prosecution for aggravated felonious sexual assault where complainant, who was ages seven and eight at the time of the offenses, testified that the defendant "stuck his fingers in my bum" and complainant either "pointed to the area of his buttocks or[] placed his hand on his buttocks" when asked to identify his "bum"; "[t]he prosecution did not ask more detailed follow-up questions, and no charts or dolls were used to aid this testimony"; court concluded that this testimony was insufficient to establish penetration of the anus; "[t]he mere chance, without more, that the witness meant 'anus' by the term 'bum' does not support the conclusion sufficient to meet the reasonable doubt standard"; "[t]he testimony * * *, absent explanation or clarification by the State, is too subjective and speculative to establish penetration of the anus beyond a reasonable doubt"); State v. Wells, 740 N.E.2d 1097, 1100 (Ohio 2001) ("[T]here is sufficient evidence of anal intercourse, for purposes of the crime of anal rape * * *, where the trier of fact finds that the defendant penetrated, however slightly, the victim's anus with any part of the defendant's body, or with any instrument, apparatus, or other object. If the evidence shows that the defendant made contact only with the victim's buttocks, there is not sufficient evidence to prove the defendant guilty of the crime of anal rape."); State v. Pullman, 306 P.3d 827, 834 (Utah Ct. App. 2013) (holding that testimony was insufficient to support conviction for sodomy on a child because, "[a]lthough [the complainant] described a sexual act involving [the defendant's] penis and her buttocks, the relevant statutes require involvement—indeed 'touching'—of the anus"); State v. A.M., 260 P.3d 229, 233 (Wash. Ct. App. 2011) ("[P]enetration of the buttocks, but not the anus, does not meet the ordinary meaning of 'sexual intercourse.'"); cf. Watkins v. State, 48 So.3d 883, 884 (Fla. Dist. Ct. App. 2010) (holding that evidence that the complainant placed her tongue "on" the defendant's anus was insufficient to establish anal penetration); Commonwealth v. Nylander, 532 N.E.2d 1223, 1225-27 (Mass. App. Ct. 1989) (holding that a jury instruction that the state must prove penetration, no matter how slight, of the buttocks was erroneous because penetration of the anal opening was required); State v. Gallagher, 668 A.2d 55, 61 (N.J. Super. Ct. App. Div. 1995) (holding that a jury instruction that "'insertion of the penis into the crevice formed by the left and right buttocks to any degree' constituted penetration" was erroneous because "touching the buttocks or slightly penetrating between the two cheeks does not constitute anal penetration[; w]hile the depth of insertion is not relevant, there must be an insertion 'into the anus' in order to prove penetration").

Therefore, the adjudication of delinquency on two counts of first-degree child molestation cannot stand.

## Lesser-Included Offense

The question remains, however, as to what action flows from our conclusion that the state failed to prove the sexual-penetration element of first-degree child molestation beyond a reasonable doubt. The respondent argues that the adjudications of delinquency should be reversed and the petitions be dismissed. We disagree.

As a matter of law, second-degree child molestation is a lesser-included offense of first-degree child molestation. See State v. Silvia, 798 A.2d 419, 424-25 (R.I. 2002); see also State v. Malouin, 433 A.2d 176, 178 (R.I. 1981) ("[S]econd-degree sexual assault is necessarily a lesser-included offense of first-degree sexual assault."). The element that differentiates the greater offense from the lesser-included offense is the type of touching that occurs; first-degree child molestation requires sexual penetration, while the lesser-included offense of second-degree child molestation requires only sexual contact. See § 11-37-8.1; § 11-37-8.3; see also Malouin, 433 A.2d at 178.[10]

This jurisdiction follows the common-law rule that, when the state charges an accused with an offense that has a lesser-included offense, the accused is on notice that "an accusation of the greater crime carries with it the charge that he [or she] has committed all the necessarily

---

[10] At oral argument, respondent contended that second-degree child molestation is not a lesser-included offense of first-degree child molestation because the second-degree offense requires proof of an element not required for conviction or adjudication on the first-degree offense: that the "intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault." Section 11-37-1(7). We reject this argument. For starters, it is inconsistent with this Court's decisions in State v. Silvia, 798 A.2d 419, 424-25 (R.I. 2002), and State v. Malouin, 433 A.2d 176, 178 (R.I. 1981). In any event, the trial justice in this case found that the state proved beyond a reasonable doubt that respondent acted with the purpose of sexual gratification or arousal.

included lesser offenses that make up the greater crime." State v. Walsh, 113 R.I. 118, 123, 318 A.2d 463, 466 (1974); see also id. at 122-23, 318 A.2d at 466. The General Assembly has codified this rule in G.L. 1956 § 12-17-14, which provides that:

> "Whenever any person is tried upon an indictment, information, or complaint and the court or jury, as the case may be, shall not be satisfied that he or she is guilty of the whole offense, but shall be satisfied that he or she is guilty of so much of the offense as shall substantially amount to an offense of a lower nature, or that the defendant did not complete the offense charged, but that he or she was guilty only of an attempt to commit the same offense, the court or jury may find him or her guilty of the lower offense or guilty of an attempt to commit the offense, as the case may be, and the court shall proceed to sentence the person for the offense of which he or she shall be so found guilty, notwithstanding that the court had not otherwise jurisdiction of the offense."

Additionally, as we explained in Silvia, this rule applies to sexual-assault offenses:

> "[W]hen '[a]ny person who is indicted for * * * first * * * degree child molestation * * * upon trial the jury [or trial justice] acquits that person of any of the charges of sexual assault and finds him or her guilty of any of the other [lesser-included] offenses [including second[-]degree child molestation], judgment and sentence may be entered against him or her accordingly.'" Silvia, 798 A.2d at 424 (quoting § 11-37-9).

Therefore, in this case, each count of the petition charging respondent with first-degree child molestation necessarily included a charge on the lesser-included offense of second-degree child molestation.[11] See Walsh, 113 R.I. at 122, 318 A.2d at 466. Similarly, in finding

---

[11] For this reason, the dissent's position that our disposition of this case "is grossly unfair to this respondent" and that "the unsuspecting respondent has been waylaid by the sua sponte decision of this Court" rings hollow. Irrespective of whether the lesser-included offense was addressed by the parties or the trial justice, the above-cited statutes, as a matter of law, placed respondent on notice that he was charged with first-degree child molestation as well as all of that crime's lesser-included offenses; such is the case in every criminal trial. See State v. Walsh, 113 R.I. 118, 122-23, 318 A.2d 463, 466 (1974) ("[General Laws 1956] § 12-17-14 is but a reaffirmation of the common[-]law rule that where an indictment charges an offense which includes within it another lesser offense, it is sufficient to prove so much of the charge as demonstrates that the accused is guilty of a crime therein contained, although not to the full extent charged against

- 14 -

respondent delinquent on the greater offense, the trial justice necessarily found that all of the elements of the lesser-included offense had been met. In fact, it was respondent who argued that the state was required to prove that he acted with the purpose of sexual arousal or gratification, and the trial justice complied, finding beyond a reasonable doubt that respondent acted with such intent.[12] On appeal, respondent argues that there was insufficient evidence to support this finding. We reject this contention.

In State v. Erminelli, 991 A.2d 1064 (R.I. 2010), we held that evidence that the defendant "intentionally touched [the complainant's] naked buttocks with his penis" was sufficient to sustain a conviction for second-degree child molestation because "[s]uch contact 'can be reasonably construed as intended by [the defendant] to be for the purpose of sexual arousal, gratification, or assault.'" Id. at 1070 (quoting § 11-37-1(7)). Similarly, in this case, there is sufficient evidence that the contact between respondent's "butt" and the twins' penises can be reasonably construed as intended by respondent to be for the purpose of sexual arousal or gratification. The trial justice found that respondent, by asking the twins to penetrate his "butt" with their penises and by voluntarily engaging in the act of contact between his intimate parts and those of Kevin and Henry, acted "for the sole and exclusive purpose of sexual gratification or arousal." She further noted that respondent's expressed desire to switch roles with Kevin and

him. * * * Consequently, a defendant is charged with the knowledge that an accusation of the greater crime carries with it the charge that he has committed all the necessarily included lesser offenses that make up the greater crime. He will not be heard to complain that he is not prepared to defend against the lesser offenses or that the statute authorizing the return of a guilty verdict on the lesser offenses deprives him of his constitutional right to a presentment on indictment relative to the 'infamous crime' which the jury believes he has committed.").

[12] The dissent characterizes the trial justice's action in this regard as "mention[ing], almost as an aside, that the element of sexual gratification was present." In our opinion, this is not accurate. In the course of three paragraphs of her bench decision, the trial justice explained that she was "convinced" that respondent acted "for the sole and exclusive purpose of sexual gratification or arousal" and that "[t]here was no other reason or purpose" for respondent's conduct.

- 15 -

Henry and put his penis on or in their intimate parts was further evidence of his purpose in engaging in this conduct. Moreover, the twins' mother testified that Kevin told her that respondent "look[ed] like he enjoyed it." After viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that the contact between respondent and the twins can be reasonably construed as intended by respondent to be for the purpose of sexual arousal, gratification, or assault. See Jackson, 443 U.S. at 319.

Contrary to respondent's suggestion, the mere fact that he characterized the exchange as an "experiment" does not foreclose this conclusion. Cf. State v. Rossi, 520 A.2d 582, 583, 584 (R.I. 1987) (rejecting sufficiency-of-the-evidence challenge in second-degree child molestation case where the defendant argued that the purpose of the contact between his penis and the minor complainant's vaginal area was to rehearse the minor's testimony that she was molested by the defendant's landlord, a story that was concocted by the defendant to combat a rent increase imposed by the landlord; the Court explained that, when "view[ing] the evidence in the light most favorable to the prosecution, drawing all reasonable inferences therefrom, one can reasonably infer from this record that when [the defendant] was 'contacting' the eight-year-old after removing all her clothing, other things were on his mind than attempting to gain revenge on his landlord for increasing the rent"). The evidence was sufficient on this element.

When, as in this case, this Court determines on appeal that the evidence adduced at a bench trial was insufficient only on the element that differentiates the greater offense from the lesser-included offense, such that a conviction or adjudication on the greater offense cannot be upheld, we have directed the entry of judgment on the lesser-included offense. See State v. Eiseman, 461 A.2d 369, 383-84 (R.I. 1983), abrogated in part on other grounds by Horton v.

- 16 -

California, 496 U.S. 128 (1990).[13]    Therefore, we remand this matter to Family Court with directions to enter an adjudication of delinquency on the lesser-included offense of second-degree child molestation and for resentencing.

Although the dissent suggests that we are "significantly departing from our well-settled law," our remand in this case follows from a straightforward application of the law of lesser-included offenses.  On the way to adjudging the respondent delinquent on the greater offense, the trial justice <u>necessarily</u> adjudged him delinquent on the lesser-included offense.  See <u>Douglas v. Jacquez</u>, 626 F.3d 501, 506 (9th Cir. 2010) ("[The defendant] was convicted of the greater offense [of arson of an inhabited structure].  On the way to finding him guilty of arson of an <u>inhabited</u> structure, the [factfinder] had necessarily found adequate proof that [the defendant] committed [the lesser-included offense,] arson of a structure. * * * In this circumstance, the prosecution <u>necessarily</u> already proved the elements of a lesser-included offense.").  Therefore, that the respondent has not conceded culpability and the evidence is not uncontroverted on appeal is entirely beside the point.  As a matter of law, the respondent has been adjudged delinquent on the lesser-included offense because the trial justice's adjudication of delinquency on the greater offense necessarily included an adjudication of delinquency on the lesser-included offense.  There is no way to avoid this conclusion.

---

[13] The dissent points out that §§ 12-17-14 and 11-37-9 refer only to the trial court's authority to find a defendant guilty on a lesser-included offense.  This is true, because criminal cases arise in the trial court, but it is beside the point in this case.  We cite these statutes merely to establish that respondent was, as a matter of law, on notice of the lesser-included offense.  Our authority to remand for entry of judgment of conviction or adjudication on a lesser-included offense does not depend on an express grant of such power by the General Assembly.  To the contrary, as we explained in <u>State v. Eiseman</u>, 461 A.2d 369 (R.I. 1983), "[s]tate and federal appellate courts have long exercised the power to reverse a conviction while at the same time ordering the entry of judgment on a lesser-included offense." <u>Id.</u> at 384 (quoting <u>Dickenson v. Israel</u>, 482 F. Supp. 1223, 1225 (E.D. Wis. 1980)).

## Conclusion

For the reasons articulated above, we conclude that the evidence was insufficient to sustain the Family Court's adjudications of delinquency on the two charges of first-degree child molestation. Accordingly, we remand this case to Family Court with directions to enter adjudications of delinquency on the lesser-included offense of second-degree child molestation and for resentencing.

**Justice Flaherty with whom Justice Robinson joins, concurring in part and dissenting in part.** We concur with the majority's well-reasoned and articulate conclusion that there was insufficient evidence at trial of penetration to sustain a finding of delinquency by reason of first-degree child molestation sexual assault. However, we depart from the majority when it concludes that this case should be remanded to the Family Court for entry of judgment of adjudication of delinquency by reason of second-degree child molestation sexual assault (second-degree child molestation), a lesser-included offense.

It is our opinion that this Court's ruling is grossly unfair to this respondent because, in the Family Court, this case was tried solely as a case of first-degree child molestation sexual assault. There was no argument by either party that the trial justice should make a finding of second-degree child molestation if she found insufficient evidence of first-degree child molestation. Although the trial justice did mention, almost as an aside, that the element of sexual gratification was present, that was neither necessary for her finding of first-degree child molestation nor was it an essential part of her decision. When the case was appealed to this Court, neither party briefed nor argued that the respondent could be adjudicated as delinquent because he committed an act of second-degree child molestation. Indeed, on appeal, the state's sole argument was that

- 18 -

the evidence was sufficient to prove penile penetration to support an adjudication of delinquency on first-degree child molestation. As a result, the unsuspecting respondent has been waylaid by the <u>sua</u> <u>sponte</u> decision of this Court.

We agree with the majority that second-degree child molestation is a lesser-included offense of first-degree child molestation. <u>See</u> <u>State v. Silvia</u>, 798 A.2d 419, 424-25 (R.I. 2002); <u>State v. Malouin</u>, 433 A.2d 176, 178 (R.I. 1981). However, it is our opinion that that does not provide an adequate basis for allowing this respondent to be subjected to further proceedings. In each case decided by this Court involving the interplay between greater and lesser-included offenses, the controversy has been initiated in the trial court, either because a trial justice refused to charge or decide on a lesser-included offense or because, over the defendant's objection, the trial justice actually did so. <u>See</u> <u>Silvia</u>, 798 A.2d at 424 (citing G.L. 1956 § 11-37-9 on joinder of offenses for the trial court's authority to enter judgment on lesser-included offenses). We are aware of no case in which this Court, on its own initiative and without argument of the parties or a decision in a trial court, remanded for entry of judgment on a lesser-included offense after vacating a conviction based on insufficient evidence.

The majority cites two statutes, G.L. 1956 § 12-17-14 and § 11-37-9, to support its reasoning that respondent was on notice of all lesser-included offenses. Section 12-17-14 says,

> "[w]henever any person is tried upon an indictment, information, or complaint and the court or jury, as the case may be, shall not be satisfied that he or she is guilty of the whole offense, * * * the court or jury may find him or her guilty of the lower offense or guilty of an attempt to commit the offense, as the case may be, and the court shall proceed to sentence the person for the offense * * *."

In adopting this language, the General Assembly was clearly referring to the trial court, not this Court. Similarly, § 11-37-9 provides that, "If upon trial the jury shall acquit the person of any of

the charges of sexual assault and shall find him or her guilty of any of the other offenses, judgment and sentence may be entered against him or her accordingly." The wording of this statute, likewise, can lead to no rational conclusion other than that the General Assembly was referring to the trial court and only the trial court. Although we do not disagree with the majority that respondent was on notice when he went to trial that he could be found delinquent on any lesser-included offense, that fact does nothing to support the majority's disposition in this matter.

Rather, the majority claims to derive authority for directing entry of delinquency on the lesser-included offense from this Court's decision in State v. Eiseman, 461 A.2d 369, 384 (R.I. 1983), abrogated in part on other grounds by Horton v. California, 496 U.S. 128 (1990). In Eiseman, the defendant was charged with possession with intent to deliver cocaine. Id. at 372. After a justice of the Superior Court denied his motion in limine to suppress the cocaine, the defendant conceded during a bench trial that the quantity of cocaine found in his possession was wholly consistent with personal use, but argued that it was not sufficient to support a conviction for possession with intent to deliver. Id. Nonetheless, the trial justice found the defendant guilty of the greater offense. Id.

On appeal, this Court agreed with the defendant. Eiseman, 461 A.2d at 383. Having arrived at that conclusion, the Court then found itself in a quandary about how to resolve the case. Id. at 383-84. We observed that, "in a jury trial of a charge of possession with intent to deliver, the trial justice would instruct the jury on the elements of the lesser offense," and that it could find him guilty of that lesser charge. Id. at 384. This Court further noted that "[c]learly, this alternative was available to the trial justice in this case if he had determined, as he should have, that the state had failed to prove intent to deliver * * *." Id. This Court then acknowledged that "[s]tate and federal appellate courts have long exercised the power to reverse

- 20 -

a conviction while at the same time ordering the entry of judgment on a lesser-included offense." Id. (quoting Dickenson v. Israel, 482 F.Supp. 1223, 1225 (E.D. Wis. 1980)). But, noting that our Court had "never availed itself of the opportunity to adopt this practice," it nonetheless determined that it would employ it in Eiseman because the evidence of guilt was overwhelming, because the defendant had conceded at trial and on appeal that the state had proven beyond a reasonable doubt that he indeed possessed cocaine, and that, as a result, there would be no prejudice to the defendant if this Court simply ordered the Superior Court to enter judgment on the lesser-included offense. Id. Therefore, the Court concluded "that a reduction of [the] defendant's conviction to the lesser-included offense * * * would serve the interests of justice and would not prejudice [the] defendant since the sufficiency of evidence on this charge is uncontroverted on appeal." Id.

The rationale employed in Eiseman is singular in our jurisprudential history and it simply is not appropriate for the case before us at present. Here, respondent has not conceded culpability, the evidence is not uncontroverted on appeal, and respondent would be manifestly prejudiced on remand. The majority here is significantly departing from our well-settled law and embracing what it maintains is the rationale of Eiseman in ordering the entry of judgment on a lesser-included offense. It has done this despite the fact that the Eiseman Court specifically explained that the Court had never before adopted such a practice. We have been unable to find any other case in which we employed that approach after doing so in Eiseman. Furthermore, it is significant that, in each of the cases cited in Eiseman as examples of appellate courts exercising the power to modify a judgment, none of those courts wielded that power sua sponte, as the majority does here. See United States v. Swiderski, 548 F.2d 445, 452 (2nd Cir. 1977) (case had been tried twice and government argued that the appellate court should enter judgment on lesser-

included offense); <u>Austin v. United States</u>, 382 F.2d 129, 140, 142-43 (D.C. Cir. 1967) (federal statute conferred power to modify judgments only where no prejudice results to the defendant; court found that the defendant had a full and fair adjudication on all elements of the lesser-included offense and based his defense on insanity, which the jury clearly rejected); <u>State v. Grant</u>, 411 A.2d 917, 920 n.6 (Conn. 1979) (noting that the jury was instructed on both burglary in the first degree and the lesser-included offense of burglary in the third degree); <u>Miller v. State</u>, 426 A.2d 842, 844 (Del. 1981) (the defendant specifically requested instruction on lesser-included offense of second-degree arson and was denied by the trial judge); <u>State v. Smith</u>, 603 P.2d 638, 642 (Kan. Ct. App. 1979) (lesser-included offense of possession is not contested); <u>People v. Monaco</u>, 197 N.E.2d 532, 534 (N.Y. 1964) (the defendant argued on appeal that the most the facts could support was the lesser-included offense of manslaughter in the first degree).

Thus, by remanding for entry of judgment, the majority's decision greatly expands the holding enunciated by this Court in <u>Eiseman</u>. As a result, it is our firm opinion that a remand to the trial court for entry of judgment on second-degree child molestation unfairly prejudices the respondent.

For these reasons, we respectfully dissent from the opinion of the majority. We would simply remand the case to the Family Court with instruction to dismiss the petition for delinquency because the prosecution failed to prove the charge that was brought against the respondent.


**TITLE OF CASE:**          In the Matter of B.H.

**CASE NO:**                 No. 2013-364-Appeal.
                             No. 2014-19-Appeal.
                             (12-1040-1)

**COURT:**                   Supreme Court

**DATE OPINION FILED:**      May 26, 2016

**JUSTICES:**                Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**              Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**        Providence County Family Court

**JUDGE FROM LOWER COURT**:

                             Associate Justice Kathleen Voccola

**ATTORNEYS ON APPEAL:**

                             For Petitioner:   Laura Welch
                                               Department of Attorney General

                             For Respondent:  Robert B. Mann, Esq.