October 19, 2018

**Supreme Court**
No. 2016-322-Appeal.
(12-1040-1)

In re B.H.                               :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re B.H.                                          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  The respondent, B.H., appeals from a Family Court order requiring him to register as a sex offender, and denying his motion to waive sex-offender registration and notification pursuant to G.L. 1956 § 11-37.1-4(j).[1]  This matter came before the Supreme Court on September 25, 2018, pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided.  After considering the arguments set forth in the parties' memoranda and at oral argument, we are convinced that cause has not been shown.  Thus, further argument or briefing is not required to decide this matter.  For the reasons outlined below, the Family Court's order is affirmed.

## I

## Facts and Travel

The pertinent facts of this case may be found in our opinion in the case of *In re B.H.*, 138 A.3d 774 (R.I. 2016), in which respondent had appealed from Family Court adjudications of

---

[1] While not addressed by either party, we note that G.L. 1956 § 11-37.1-4, entitled, "Duration of registration—Frequency of registration[,]" concerns only the duration and frequency of registration, while § 11-37.1-3, entitled "Registration required—Persons covered[,]" sets out individuals who are required to register as sex offenders.  It is quite plausible that § 11-37.1-4(j) does not give the trial justice discretion to waive the registration requirement for juveniles in toto, but only to determine the duration of registration for "as long as the court deems it appropriate to protect the community and to rehabilitate the juvenile offender."  However, in light of our opinion in this case, we need not reach this issue at this time.

delinquency with respect to two charges of first-degree child molestation sexual assault. We determined in that appeal that the state had not proven the requisite element of penetration to substantiate two counts of first-degree child molestation sexual assault. *In re B.H.*, 138 A.3d at 783. However, in doing so, we held that, because the trial justice had made an explicit finding that there was contact for the purpose of sexual gratification, respondent was responsible for the lesser-included offense of second-degree child molestation sexual assault.[2] *Id.* at 785, 786. We remanded the case to the Family Court "with directions to enter adjudications of delinquency on the lesser-included offense of second-degree child molestation and for resentencing." *Id.* at 787.

At the hearing on remand, which took place on August 17, 2016, respondent pressed his motion to waive sex-offender registration and notification that he had filed prior to that hearing, arguing that he should only be required to register as a sex offender until his nineteenth birthday, which was one week after the hearing date. In support of his motion to waive sex-offender registration, respondent contended that the conduct that formed the basis of the adjudications of delinquency on the two counts of second-degree child molestation sexual assault was criminal only because the victims, Kevin and Henry,[3] were under the age of fourteen at the time of the incident, and thus the trial justice had the discretion to waive sex-offender registration under § 11-37.1-4(j). The respondent argued that, had the two youths been sixteen years old rather than eleven years old, no charges would have been brought against respondent. In response, the state argued that the trial justice had no discretion in this case because respondent had used

---

[2] "A person is guilty of a second-degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under." General Laws 1956 § 11-37-8.3.
[3] We use fictitious names to protect the privacy of the victims, who were eleven years old at the time of the conduct.

threats, manipulation, and coercion against the victims, which made his conduct criminal apart from the ages of the victims.

With regard to the trial justice's discretion, respondent argued that he had been fully compliant with all previous court orders regarding registration and therapy. The respondent based his argument in support of a waiver in part on reports from David W. Ingle, Psy.D., a licensed clinical psychologist, and Leo D. Keating, a licensed clinical social worker, both of whom indicated that respondent posed little risk to the community for sexual misconduct. The respondent pointed out that Dr. Ingle, who has had extensive experience in treating adult and juvenile offenders, specifically indicated that he could not diagnose respondent with pedophilia due to his age and the various statistical analyses that were performed. According to respondent, Dr. Ingle's assessment was supported by Mr. Keating, who performed both a Millon Clinical Multiaxial Inventory-III[4] and an Abel Assessment of Sexual Interest-3,[5] in addition to reviewing redacted Cranston police statements, probation records, and the sentencing report.

The state argued that Dr. Ingle and Mr. Keating had based their assessments purely on respondent's account of the events, and that, therefore, the assessments themselves were suspect. According to the state, respondent had not accepted responsibility for his actions and had not been fully rehabilitated. The state further argued that, in the five years since the incident,

---

[4] "The primary intent of the [The Millon Clinical Multiaxial Inventory-III] is to provide information to clinicians * * * who must make assessments and treatment decisions about persons with emotional and interpersonal difficulties." The Millon Clinical Multiaxial Inventory-III (MCMI-III) (2009) with new norms and updated scoring, THE MILLON PERSONALITY GROUP, https://www.millonpersonality.com/inventories/MCMI-III/ (last visited Oct. 15, 2018).
[5] "The [Abel Assessment of Sexual Interest]-3 can be used with adult men and women with sexual behavior problems. It is specifically designed to measure a client's sexual interest and to obtain information regarding involvement in a number of abusive or problematic sexual behaviors." The AASI-3 and Psychological Assessments, ABEL SCREENING, http://abelscreening.com/products/evaluation-treatment-planning/aasi-3/ (last visited October 15, 2018).

respondent had not participated in any substantive sex-offender treatment, but had been enabled and accommodated by his family and treatment providers. Additionally, the state faulted Dr. Ingle for not performing a juvenile-sex-offender protocol evaluation as part of his assessment of respondent due to Dr. Ingle's belief that the evaluation was not reliable.[6]

Ultimately, the trial justice committed respondent to the Rhode Island Training School for Youth, but suspended the commitment; respondent was placed on probation until further order of the court.[7] The court also required respondent to register as a sex offender.[8] In finding that she had no discretion under § 11-37.1-4(j) in this case, the trial justice contrasted respondent's case with what she termed a "Romeo and Juliet type of situation":[9]

> "where two kids who were perhaps thirteen years old, engage in sexual contact that is consensual. And, that under that scenario, sometimes the girl's parents might find out. They are outraged. They call the police. They have the boyfriend charged. The boyfriend is charged with first degree child molestation because of the age of the victim in that matter. And then the [c]ourt will have the ability at that time, if the [r]espondent is adjudicated, to look at the statute and look at the ages of the parties and say, well due to the age and the consent between the parties, this [c]ourt finds that the [r]espondent is not a danger to the public and will suspend the obligation to register as a sex offender."[10]

In so stating, the trial justice found that there was a clear lack of consent to the sexual contact in this case; she pointed out that the victims were coerced by respondent, an older friend, who told them it was merely "an experiment to find out if you are gay." Additionally, the trial

---

[6] According to the state, the "juvenile sex offender protocol" is an assessment that the Rhode Island Family Court often relies upon to measure a juvenile's risk of committing sexual offenses in the future.

[7] By law, the sentence of incarceration and probation ended on respondent's nineteenth birthday. *See* G.L. 1956 § 14-1-7.3.

[8] Section 11-37.1-4(j) requires a juvenile offender to register as a sex offender for fifteen years.

[9] *Romeo and Juliet* is a classic Shakespearian tragedy about two adolescent lovers caught in the middle of their families' blood feud.

[10] The trial justice went on to state: "under that scenario that the [c]ourt just imagined, there was consent; there was the closeness in age between the [r]espondent and the victim in that matter."

- 4 -

justice found that there was no curiosity-motivated sexual play by the two young victims, with the only mention of homosexuality coming from respondent himself. The trial justice also highlighted the fact that respondent was nearly fourteen years old at the time of the incident, while Kevin and Henry had not yet reached puberty. Moreover, she found that, while the respondent was also young at the time and sexually curious, most adolescents do not experiment with younger persons in a coercive and manipulative manner.

Furthermore, the trial justice stated that, even if she had discretion under § 11-37.1-4(j) in the present case, she would not have exercised that discretion. The trial justice based that determination on her finding that respondent was an untreated sexual offender who had not accepted responsibility for his actions. She agreed with the state that Dr. Ingle and Mr. Keating had relied in their assessments upon respondent's own account of the events. Finally, she contrasted what she found to be respondent's lack of accountability for his actions with the fact that the victims were "horrified over the entire experience[,]" finding that this case did not fit the factual situation necessary for her to exercise discretion. An order entered imposing sentence and denying respondent's motion to waive sex-offender registration. On August 19, 2016, respondent timely appealed to this Court.

## II

### Standard of Review

"[W]e review questions of statutory interpretation *de novo*." *State v. Hazard*, 68 A.3d 479, 485 (R.I. 2013) (quoting *Campbell v. State*, 56 A.3d 448, 454 (R.I. 2012)). In so doing, our ultimate goal is to give effect to the purpose of the act as intended by the Legislature. *State v. Santos*, 870 A.2d 1029, 1032 (R.I. 2005). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute

their plain and ordinary meanings." *Id.* (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). If, however, the language of a statute is ambiguous, this Court turns to "our well-established maxims of statutory construction in an effort to glean the intent of the Legislature."[11] *Town of Warren v. Bristol Warren Regional School District*, 159 A.3d 1029, 1039 (R.I. 2017) (quoting *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1078 (R.I. 2013)). "[T]he Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the [C]ourt will give effect to every word, clause, or sentence, whenever possible." *State v. Clark*, 974 A.2d 558, 571 (R.I. 2009) (quoting *State v. Bryant*, 670 A.2d 776, 779 (R.I. 1996)). As we have held, "[t]his [C]ourt will not construe a statute to reach an absurd result." *Long v. Dell, Inc.*, 984 A.2d 1074, 1081 (R.I. 2009) (quoting *Shepard v. Harleysville Worcester Ins. Co.*, 944 A.2d 167, 170 (R.I. 2008)). Finally, we give great respect and deference to the factual determinations of a trial justice. *State v. Erminelli*, 991 A.2d 1064, 1069 (R.I. 2010).

### III

### Discussion

In this appeal, respondent argues that: (1) the words of the statute, § 11-37.1-4(j), "the conduct of the parties is criminal only because of the age of the victim," plainly apply to his case; and (2) the trial justice should have exercised the discretion granted to her by § 11-37.1-4(j) to waive sexual-offender registration.

Prior to 2000, § 11-37.1-4, entitled, "Duration of registration—Frequency of registration[,]" did not contain a specific provision regarding the duty of juveniles to register as sex offenders. Instead, the statute set forth the procedure for registration by any person required

---

[11] In their Rule 12A statements to this Court, both parties submit that the language contained in § 11-37.1-4(j) is not ambiguous.

- 6 -

to register as a sex offender under § 11-37.1-3.[12]  In 2000, the Legislature added subsection (j) to § 11-37.1-4, promulgating sex-offender registration requirements for juveniles in particular. Seemingly to combat the harsh results that might follow from requiring juveniles to register as sex offenders in some cases, the Legislature also saw fit to give the Family Court certain judicial discretion.  To this end, § 11-37.1-4(j) provides, in relevant part:

> "[I]f a juvenile is adjudicated delinquent under [G.L. 1956] §[§] 11-37-8.1 or 11-37-8.3, the court shall assess the totality of the circumstances of the offense and if the court makes a finding that the conduct of the parties is criminal only because of the age of the victim, the court may have discretion to order the juvenile to register as a sex offender as long as the court deems it appropriate to protect the community and to rehabilitate the juvenile offender."

This provision contains a clear two-step analysis: (1) the trial justice must assess the particular circumstances of the case to determine whether the conduct of the juvenile respondent was criminal only because the victim was fourteen years of age or under; and (2) if the trial justice determines that to be the case, she may require registration for only as long as it is necessary to protect the community and to rehabilitate the juvenile.  It is the first part of this analysis that this Court is called upon to interpret in the present case.

In his Rule 12A statement to this Court, respondent claims that the statutory language "conduct of the parties is criminal only because of the age of the victim" applies here because, if the victims were over the age of fourteen, respondent would not have been guilty of second-degree child molestation sexual assault. Therefore, he contends that the trial justice had discretion under § 11-37.1-4(j) in this case.  This argument misses the mark.  Both §§ 11-37-8.1 and 11-37-8.3 (first-degree and second-degree child molestation sexual assault) require proof

---

[12] Currently, persons required to register under § 11-37.1-3 include: "Any person who, in this or any other jurisdiction: (1) has been convicted of a criminal offense against a victim who is a minor, (2) has been convicted of a sexually violent offense, (3) has been determined to be a sexually violent predator * * *."

- 7 -

that the victim was fourteen years of age or under at the time of the incident.  Thus, every case of first-degree and second-degree child molestation sexual assault is essentially "criminal *only* because of the age of the victim."  A plain reading of § 11-37.1-4(j) reveals that the Legislature did not extend judicial discretion to every case in which a juvenile is adjudicated delinquent of first-degree or second-degree child molestation sexual assault.  Rather, the Legislature limited the discretion to those cases where, under "the totality of the circumstances[,]" the victim's age is the *only* reason to find that the respondent's conduct was criminal.[13]

Here, it is clear from the record that the trial justice based her determination that § 11-37.1-4(j) did not give her discretion in the instant matter on her finding that "factually this case does not fit into the criteria required for the [c]ourt to exercise discretion[.]"  While she pointed to no specific criminal statute, she found as fact that this was not a case of willing sexual exploration between curious adolescents, as in her "Romeo and Juliet" example.  To the contrary, she found "that there was coercion, there was manipulation and there was, in fact, the abuse of trust."  In the trial justice's estimation, this coercion made the conduct at issue criminal, apart from the ages of the victims.

We agree with the trial justice's interpretation of § 11-37.1-4(j), and we conclude that she appropriately applied the plain language of the statute in determining that she had no discretion in the present case.  Any other reading would essentially rewrite the statute—a task this Court is not at liberty to perform.  *See State v. Calise*, 478 A.2d 198, 201 (R.I. 1984) (holding that the Court has "neither the authority nor the competence to rewrite" a statutory definition).  Under a

---

[13] "[W]e are [also] mindful of the oft-quoted maxim '*expressio unius est exclusio alterius*,' ('the expression of one thing is the exclusion of another')." *Ryan v. City of Providence*, 11 A.3d 68, 75 (R.I. 2011) (quoting Black's Law Dictionary 1830 (9th ed. 2009)).  In § 11-37.1-4(j), the Legislature, referring to subsections (b) and (c), has required automatic sex-offender registration for juveniles adjudicated delinquent as sexually violent predators, as well as recidivists and aggravated crime offenders, without allowing for judicial discretion.

plain reading of § 11-37.1-4(j), once a trial justice finds the existence of some conduct under the facts of the particular case that would be considered criminal, beyond the age of the victim, the inquiry is at an end, and the respondent is required to register as a sex offender.

Because we hold that the trial justice did not have discretion in this case under § 11-37.1-4(j), we leave for another day the determination of which factors a Family Court trial justice should properly consider when exercising his or her discretion under the second part of the § 11-37.1-4(j) analysis.

**IV**

**Conclusion**

For the reasons set forth in this opinion, we affirm the decree and order of the Family Court, and remand the papers to that tribunal.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re B.H. |
| **Case Number** | No. 2016-322-Appeal. (12-1040-1) |
| **Date Opinion Filed** | October 19, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer From Lower Court** | Associate Justice Kathleen A. Voccola |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of Attorney General<br><br>For Respondent:<br><br>Robert B. Mann, Esq. |